In the Matter of DAMALSON GROCERY, INC., Petitioner, v. STATE LIQUOR AUTHORITY, Respondent.— Proceeding pursuant to article 78 of the CPLR to annul respondent's determination, dated July 24, 1974, which canceled petitioner's off-premises beer license. Determination annulled, on the law, and charges dismissed, without costs. On June 2, 1969 respondent issued an off-premises beer license to petitioner for its grocery business. At that time petitioner's sole stockholder, officer and director was David Malson. He died in 1971 and his widow, Rose Malson, was appointed administratrix of his estate. She assumed ownership of the grocery business and applied for and, on July 30, 1971, obtained respondent's approval of a corporate change so as to constitute herself, as administratrix, owner of the corporate shares and name her president, secretary and treasurer of petitioner. On or about January 14, 1974 respondent gave petitioner notice of a hearing to revoke its license on the grounds (1) that it had permitted one Bessie Meyers, also known as Alma Garcia, to avail herself of the license and (2) that it had effectuated a corporate change in stockholders, officers or directors without respondent's permission. The charges were sustained after the hearing and an order canceling the license was issued. This proceeding followed. We find no evidence in the record as a whole to support the determination under review. The uncontradicted evidence at the hearing showed that Mrs. Meyers had been employed by David Malson in 1969 as a full-time manager of the licensed premises. After Malson's death in 1971 his widow continued the operation of the store with the same employees and under the same format as had her husband. During her husband's lifetime Mrs. Malson had no familiarity with the operation of the business and after his death she relied heavily on Mrs. Meyers to oversee it. The 1972 renewal application filed by Mrs. Malson stated she would not take an active part in the actual operation of the business. She is over 63 years of age, frail, in poor health and lacks business experience. Respondent's investigator testified that he visited the premises on November 8, 1973 and was told by an individual in attendance that Mrs. Malson was the owner but that she did not come to the store until 6:00 P.M. He saw an open checkbook on the counter containing four checks presigned by Alma Garcia and observed the person then in charge of the store at the time fill in one of the checks and give it to a bread delivery man. The investigator also interviewed Mrs. Malson, who said she left the entire operation to Mrs. Meyers and that the latter paid the rent for the store, did all the ordering, hired and fired all employees, kept the books and in general controlled the over-all operation of the business. Mrs. Malson said she was conducting the business exactly as her husband had done and was merely trying to sell it. She was receiving Social Security benefits and in lieu of cash would take groceries from the store about once a week; if she

needed cash she would take it. We find nothing in the record to support respondent's determination that petitioner had allowed another to avail herself of the license. Corporations act through their employees and it is not improper per se for a corporate licensee to employ a full-time manager. There is no indication that Mrs. Meyers was anything other than a full-time manager or that she received any of the profits of the business or anything other than her stated salary. Indeed, respondent introduced in evidence a number of petitioner's Employer's Quarterly Tax Returns during 1972 and 1973 which list " B. Meyer " as an employee receiving specified wages, thus indicating she received nothing other than her salary. With respect to the second charge against petitioner, respondent submitted a bill of particulars which specified that the unauthorized corporate change occurred on " July 30, 1971 when Rose Malson became sole principal in the licensed premises." At the hearing there was no evidence that any corporate change occurred on July 30, 1971 other than the one which respondent approved on that date. That approval refutes the charge that the change was made without respondent's permission. The only indication of any corporate change at the hearing consisted of two certifications made to a commercial bank by Alma Garcia on May 5, 1969 (28 days before respondent issued the license to petitioner) to the effect that (1) she was the secretary of petitioner and David Malson was the president and (2) she had been authorized by corporate resolution to sign checks for petitioner as secretary. The latter certification was attested by David Malson. We find that these papers were executed and delivered to the bank in 1969 for the purpose of authorizing it to honor checks signed by Alma Garcia on behalf of the corporation, of which she was the full-time manager, and that they do not bind Malson's administratrix vis-à-vis respondent. That Malson did not part with ownership of the corporate shares and did not actually appoint Alma Garcia secretary of the corporation may reasonably be inferred from the fact that as his heir Rose Malson effectuated a corporate change approved by respondent on July 30, 1971, making her the sole principal in the licensed premises. As the hearing officer found, Mrs. Malson was the sole stockholder, as administratrix of her husband's estate, and was individually the sole officer of the corporation. Gulotta, P. J., Martuscello, Latham, Christ and Benjamin, JJ., concur.